# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN POWELL, | : | CIVIL NO. 1:12-CV-2455 |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

The plaintiff, Kevin Powell ("Powell"), a state prisoner who has since been released, brings this civil action for alleged constitutional and statutory injuries incurred while he was imprisoned at the State Correctional Institution at Huntingdon ("SCI Huntingdon").[1] The matter is presently proceeding *via* an amended complaint. In the amended complaint, Powell raises claims for violations under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983; violations of his rights under Title II of the Americans with Disabilities Act of 1990 ("ADA"); and violations of his rights under the Rehabilitation Act of 1973 ("RA"). The defendants have filed a motion to dismiss Powell's amended complaint pursuant to Rule 12(b)(6) of the Federal

---

[1] On November 14, 2013, I held a telephonic conference in this matter, and Powell participated. Based on the contents of that conference, it is clear and undisputed that Powell has since been released from state custody.

Rules of Civil Procedure.  The defendants also move to strike certain paragraphs of the amended complaint under Federal Rule of Civil Procedure 12(f).  For the following reasons, I recommend that the defendants' motion be granted in part and denied in part.

## I.    Procedural History.

On December 10, 2012, Powell initiated this action by filing a *pro se* complaint.  *Doc.* 1.  On December 17, 2012, Powell also filed a motion to proceed *in forma pauperis* that I eventually granted.   *Docs.* 9 & 11.   Thereafter, on February 15, 2013, Powell's counsel entered her appearance.  *Doc.* 25.  As well, through counsel, Powell filed an amended complaint, *Doc.* 30, rendering moot the defendants' prior motion to dismiss.

On March 21, 2013, the defendants' filed the motion under review and a timely brief in support.  *Docs.* 31 & 33.  Subsequently, Powell filed a timely brief in opposition.  *Doc.* 35.  The defendants did not file a reply brief and the briefing period has since closed.  The motion, having been briefed by the parties, is ripe for disposition on the merits.

## II.    Powell's Amended Complaint.

In his amended complaint, Powell names the following 6 defendants: (1) John Wetzel ("Wetzel"), the Secretary of the Pennsylvania Department of Corrections ("DOC"); (2) Tabb Bickell, the Superintendent at SCI Huntingdon; (3)

Mark Garman, the Deputy Superintendent at SCI Huntingdon; (4) William Walters, a Major in charge of Unit Management at SCI Huntingdon; (5) Timothy Johnson, a Lieutenant at SCI Huntingdon; and (6) the DOC. *Doc.* 30 at ¶¶ 4-9. Wetzel is sued in his official capacity while the other named defendants are sued in their individual and official capacities. *Id.*

In the amended complaint, Powell begins laying the framework for his claims by explaining that he is involved in other cases filed in the federal courts; at least three of those matters have been filed in this Court and assigned to me. Rather than going into detail, I will take judicial notice of those cases including the fact that this Court, in a 2009 federal criminal proceeding, ruled that Powell was incompetent to stand trial on charges that he allegedly sent a threatening communication to former United States President George W. Bush. The Court rendered its ruling based on a psychologists' evaluation from 2009, finding that Powell suffers from a delusional disorder. With respect to the allegations pertinent to his claims in this case, Powell alleges the following.

In addition to his delusional disorder, Powell claims that his prison records indicate that he participated in the sport of boxing throughout his life and he has suffered a history of head trauma. *Doc.* 30 at ¶¶ 33-34. Based on his mental condition, Powell alleges that he is vulnerable, impressionable, and gullible. *Id.* at ¶ 34. On several occasions, Powell submitted written and verbal requests for

"safer and more appropriate housing" within a DOC institution. *Id.* at ¶ 35. The defendants, however, purportedly ignored or denied them. *Id.* at ¶ 36.

With respect to Powell's requests, Johnson allegedly told Powell that the Restricted Housing Unit ("RHU") is a good place for him to remain safe. *Id.* at ¶ 37. This sentiment was repeated to Powell, when Walters informed him that there was no other suitable placement in general population. *Id.* at ¶ 49. As a result, Powell claims that Johnson caused him to be confined in the RHU beginning in November 2012. *Id.* at ¶ 40.

On November 8, 2012, almost a week after Powell had been placed in the RHU, Powell avers that he informed Johnson that he feared being murdered there because of his race. *Id.* at ¶ 41. Johnson, though, allegedly did not take any action. *Id.* at ¶ 42. Similarly, in November 2012, Powell claims that he informed Bickell that he feared being murdered in the RHU, but Bickell apparently took no action. *Id.* at ¶¶ 43-44. And, Powell claims to have asked Walters to be transferred to a different prison; however, rather than taking any action, Powell alleges that Walters told Powell that he is crazy and files too many lawsuits. *Id.* at ¶¶ 476-48.

Aside from Walter's purported comment that Powell is crazy, Powell claims that "staff" made racial slurs, references to their unlimited power, their intent to murder him, and his (i.e. Powell's) inability to do anything about it. *Id.* at ¶¶ 50, 64-65, 81-83. Powell avers that such "petty" and "hostile" comments greatly

affected him because of his mental illness.   As well, Powell claims that the negative treatment he received exacerbated the symptoms of his mental illness. *See id.* at ¶¶ 52, 68.

Powell further avers that he was baited by SCI Huntingdon employees, who targeted him because of his mental illness.   *Id.* at ¶ 53.   Powell provides the following specific examples: (1) January 10, 2013, two non-defendant employees at SCI Huntingdon slammed the cell door on him as he tried to exit to get his medication[2]; (2) & (3) January 19 and February 4, 2013, a non-defendant SCI Huntingdon employee told Powell that he was going to do something "real bad" to him (i.e. Powell); (4) a non-defendant SCI Huntingdon employee refused to allow Powell to follow inventory procedures while transferring him and informed Powell that his documents would be destroyed because of his legal complaints; (5) non-defendant SCI Huntingdon employees required Powell to be in two places at the same time resulting in Powell missing his opportunity to shower or else miss out on taking his medications; (6) two of the same non-defendants entered Powell's cell in his absence, threw his legal papers on the ground, pretended to conceal other papers, slammed the cell door closed, and later falsely claimed that Powell used abusive language; and (7) a non-defendant SCI Huntingdon employee ordered Powell to stand up during a visit and dragged him to his feet causing him to fall on

---

[2]     Powell claims that this particular activity occurred "on a number of other occasions."  *Doc.* 30 at ¶ 57.

the floor and strike his head on a metal chair. *Id.* at ¶¶ 54-56, 58-61, 67-71.

In his complaint, Powell also alleges that Bickell, Garman, Walters, and Johnson, were made personally aware of these incidents, and the general conduct of SCI Huntingdon employees, through oral and written correspondence. *See id.* at ¶¶ 76, 85-86. Through the defendants' communication with him, Powell avers that they also observed his "deteriorating mental state." *Id.* at ¶ 85.

Moreover, according to Powell, he received no psychological counseling while in the DOC's custody. *Id.* at ¶ 89. Instead, Powell claims that he was solely confined to a cell in the RHU, where his mental state worsened. *Id.* at ¶ 90-91. Similarly, Powell complains that his confinement in the RHU prevented him from gaining access to some federally funded programs including prison employment, classes, recreational facilities, chapel services, media, the law library, the commissary, and the common dining hall. *Id.* at ¶¶ 95-98.

Last, Powell claims that prisoners offering to assist him on legal matters were prevented from having contact with him. *Id.* at ¶ 99-100. As well, Powell asserts that the defendants did not provide him with assistance to help him understand the prison grievance procedure, they misled Powell about filing claims in the courts, and they denied him access to legal resources resulting in a delay in trying to obtain relief under the law. *Id.* at ¶¶ 104-06.

For exhaustion purposes, Powell avers that he has exhausted his administrative remedies. *Id.* at ¶ 108. He now brings this action seeking to recover declaratory and injunctive relief, in addition to damages.

## III. <u>Jurisdiction and Legal Standards</u>.

First, given Powell's claims, arising under both the United States Constitution and federally enacted statutes, I find that this Court maintains subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Moreover, the defendants have not challenged the Court's personal jurisdiction, and since it is a defense than can be waived, *see* Fed.R.Civ.P. 12(h)(1), I decline to address that issue herein.

With respect to the applicable legal standards, Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for a complainant's failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 232 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)).   To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the Court must conduct a three-step inquiry.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130–31 (3d Cir. 2010).   In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.*  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).   Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. *Id.*; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).   Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level")).   A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

With respect to the defendants' motion to strike, under Rule 12(f) of the Federal Rules of Civil Procedure, the Court may strike from a pleading "an

8

insufficient defendant or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).  These types of motions, however, are not favored by federal courts and should generally be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one of more of the parties to the action. 5C Fed. Prac & Proc. Civ. § 1382 (3d ed.); *see e.g.*, *Lakits v. York*, 258 F.Supp.2d 401 (E.D. Pa.2003) (Baylson, J.), *Garlanger v. Verbeke*, 223 F.Supp.2d 596 (D.N.J. 2002) (Brotman, J.), *Loughrey v. Landon*, 381 F.Supp. 884, 888 (E.D. Pa.1974) (Gorbey, J.), *Randolph Laboratories, Inc. v. Specialties Development Corp.*, 62 F.Supp. 897 (D.N.J. 1945) (Meaney, J.), *F.T.C. v. Hope Now* Modifications, LLC, 2011 WL 883202 (D.N.J. Mar. 10, 2011) (Simandale, J.), *American Oil Co. v. Cantelou Oil Co.*, 41 F.R.D. 143 (W.D. Pa. 1966) (Rosenberg, J.).  This position is in line with the view that modern litigation is too protracted and expensive for a court to expend time and effort pruning or polishing the pleadings. 5C Fed. Prac & Proc. Civ. § 1382 (3d ed.); *see Manhattan Const. Co. v. McArthur Elec., Inc.*, 2007 WL 295535, at *6 (N.D. Ga. Jan. 30, 2007) (Duffey, J.); *see also*, *Zaloga v. Borough of Moosic*, 3:10-CV-2604, 2013 WL1909538 (M.D. Pa. May 8, 2013)(Brann, J.)(applying this standard to a case brought pursuant to 42 U.S.C. §§ 1983, 1988).

## IV.    Discussion.

In his amended complaint, Powell raises the following claims: Count I –
Eighth Amendment violation, pursuant to 42 U.S.C. § 1983, against Bickell,
Garman, Walters, and Johnson for acting with deliberate indifference to Powell's
medical needs; Count II – Eighth Amendment violation, pursuant to 42 U.S.C. §
1983, against Bickell, Garman, Walters, and Johnson for their failure to supervise[3];
Count III – Exclusion from services of a public entity in violation of the ADA;
Count IV – Exclusion of services of a federally funded entity in violation of the
RA; and Count V –Fourteenth Amendment violation, pursuant to 42 U.S.C. §
1983, for denial of access to courts.  The defendants move for dismissal of all
claims and to have certain paragraphs stricken from the amended complaint.  The
defendants' motion and the arguments contained therein will be addressed
*seriatim.*

### A. The Civil Rights Statute – 42 U.S.C. § 1983.

Section 1983 of Title 42 of the United States Code offers private citizens a
means to redress violations of federal law committed by state officials.  *See* 42
U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

---

[3]    Powell's actual claim is for the defendants' failure to train and supervise
their subordinates.  However, as discussed in *Sample v. Diecks*, 885 F.2d 1099,
1116 (3d Cir. 1989), "the rubric [of] 'supervision' entails … training …. [T]he
characterization of a particular aspect of supervision is unimportant."

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under this section, a plaintiff must demonstrate that (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). The defendants' motion does not challenge whether they were acting "under color of state law." Thus, whether Powell's § 1983 claims can survive the instant motion depends upon whether he has sufficiently pled facts to satisfy the second element of a § 1983 claim.

## B. Count I: Eighth Amendment - Deliberate Indifference to Powell's Medical Needs.

Powell raises this § 1983 claim under the Eighth Amendment[4], claiming that

---

[4]        The Eighth Amendment explicitly provides, "Excessive bail shall not be

Bickell, Garman, Walters, and Johnson were deliberately indifferent to his medical needs. *Doc.* 30 at ¶¶ 109-10. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, under 42 U.S.C. § 1983, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). This standard "is applicable in evaluating the constitutional adequacy of psychological or psychiatric care provided at a jail or prison." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979)(quoted case omitted). In order to satisfy this test, an inmate must allege a serious medical need and a prison official's deliberate indifference to that need. *See Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoted case

---

required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. Amend. VIII.

omitted).  A serious medical need may also be established if the denial or delay of medical care results in the unnecessary and wanton infliction of pain, a lifelong handicap, or permanent loss.  *Id.*

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety.  *See Farmer*, 511 U.S. at 837-38. Without the requisite *scienter*, a prison official's conduct alone will not constitute deliberate indifference.  *Id.* Deliberate indifference does not require an express intent to cause harm, but it does require more than mere negligence.  *Id.* at 835-86. Accordingly, in the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed.  *Estelle*, 429 U.S. at 104-105; *see Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (identifying scenarios that satisfy *Estelle*).

Not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.  If a prisoner is under the care of medical experts, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their

assistants are mistreating (or not treating) a prisoner...." *Spruill*, 372 F.3d at 236; *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).   This is true because "[h]olding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain [the prison's] division of labor." *Id.*

In the case *sub judice*, the defendants argue that Powell has not met either prong of the *Estelle* standard.  First, the defendants contend that although Powell alleges that he was diagnosed with a delusional disorder in 2009, he fails to allege facts describing the prescribed course of treatment. *Doc.* 33 at 6.  Second, with respect to the subjective element, the defendants, who are not medical experts, argue that they were entitled to defer to the medical judgment of staff physicians. *Id.*  According to the defendants, it should be inferred that Powell was under the care of staff physicians given that Powell avers that he took medication given to him at the pill line. *Id.* at 6-7.  In opposition, Powell's argument is not persuasive.

First, Powell has failed to allege facts describing the prescribed course of treatment for his mental illness.  Nevertheless, under *Estelle*, I find that Powell has sufficiently satisfied the objective component given his serious mental illness.  But, under the subjective component, Powell's argument is premised on allegations that he received no treatment for his mental disorder and the defendants ignored his requests to be transferred "where he would not be subjected to taunts by [non-medical] staff members...." *Doc.* 35 at 5-6.  Noticeably missing from Powell's

14

amended complaint is any allegation that the non-medical defendants had reason to believe (or actual knowledge) that prison doctors or their assistants were mistreating (or not treating) Powell.  The reason that I believe this law applies is because the only reasonable inference that can be made from the amended complaint is that Powell was under the care of medical experts given that he was required to take certain medications in the pill line.  Whether the level of care he received by the medical experts at SCI Huntingdon amounted to an Eighth Amendment violation, or whether they were even treating his mental illness at all, is not an issue in this matter as the medical care providers are not named defendants.  Instead, for non-medical defendants, Powell was required to allege facts demonstrating that the non-medical defendants knew, or were reasonably aware, that Powell was not being treated, or mistreated, by medical experts at SCI Huntingdon.  Powell, however, fails to provide such allegations.  As well, Powell has not alleged that these defendants denied, delayed, or interfered with any prescribed course of medical treatment.  Instead, Powell's complaint is focused upon the alleged "taunts" by other non-medical experts, which has less to do with the receipt of medical care as it does their alleged abusive practices, generally.

Accordingly, to rule that the non-medical defendants named here were deliberately indifferent to Powell's medical needs without further allegations, would have the effect of putting a strain on the division of labor inside the prison

walls; an effect that the *Spruill* court cautioned against. Therefore, Powell's claim that the defendants were deliberately indifferent to his medical needs should be dismissed.

### C. Count II: Eighth Amendment - Failure to Supervise.

Powell brings this § 1983 claim under the Eighth Amendment, asserting that Bickell, Garman, Walters, and Johnson violated his right to be free from cruel and unusual punishment through their failure to supervise prison staff and their toleration of, and acquiescence in, the cruel practices. *Doc.* 30 at ¶¶ 111-12. Generally, for a supervisor to be held liable under § 1983, Plaintiffs must show more than *respondeat superior* liability and, instead, must show that the supervisor played a personal role in violating their rights. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). This can be shown by personal conduct of the supervisor, personal direction from a supervisor, or by "actual knowledge and acquiescence." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Alternatively, a supervisor may be held liable under § 1983 if it is shown that he or she "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). The Third Circuit developed this latter test based on the Supreme Court's reasoning in *City of Canton v. Harris*, 489 U.S. 378 (1989).

Under the *City of Canton* regime, to hold a supervisor liable because his policies or practices led to a constitutional violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and allege that: (1) the existing policy or practice created an unreasonable risk of the constitutional injury; (2) the supervisor was aware that the risk was created; (3) the supervisor was indifferent to that risk; and (4) the constitutional injury resulted from the policy of practice. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

According to the Third Circuit, one way – "perhaps the easiest way" – a plaintiff can make out a supervisor liability claim is by alleging that "the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries." *Id.* (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (1989)).  In fact, "[n]ormally, an unreasonable risk in a supervisory liability case will be shown by evidence that such harm has in fact occurred on numerous occasions." *Sample*, 885 F.2d at 1118.  "But that is not the only way to make out such a claim 'as there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will along support findings of the existence of an unreasonable risk … and of indifference to it.'" *Beers-Capitol*, 256 F.3d at 134 (quoting *Sample*, 885 F.2d at 1118).

Given these exacting standards, it is not enough under *City of Canton* for a plaintiff to allege that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. *Sample*, 885 F.2d at 1118. Instead, a District Court must insist that the plaintiff identify specifically what it is that a defendant failed to do that evidences his or her deliberate indifference. *Id.* "Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" *Id.*

In this case, the defendants primarily argue that Powell has failed to allege a constitutional injury to qualify his Eighth Amendment supervisor liability claim against the defendants. *Doc.* 33 at 8. According to the defendants, the conduct of their subordinates amounts to nothing more than mere verbal threats or harassment. *Id.* In opposition, Powell's argument misses the point. Specifically, although Powell discusses the four-part test from *Canton of Ohio*, he fails to argue that he actually suffered a constitutional injury giving rise to a supervisor liability claim. *See generally*, *Doc.* 35 at 6-11. Without such a constitutional injury, Powell's supervisory liability claim must fail. *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d Cir. 2011) (nonprecedential); *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011).

At most, the reprehensible and deplorable conduct that Powell describes in his complaint (*Doc.* 30 at ¶¶ 53-71), and relies on in support of his argument (*Doc.* 35 at 10), amounts to nothing more than mere verbal threats and harassment.  As Judge Conaboy explained:

> It has been held that the use of words generally cannot constitute an assault actionable under § 1983. *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Maclean v. Secor*, 876 F.Supp. 695, 698-99 (E.D.Pa.1995); *Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson*, 822 F.Supp. 185, 189 (D.N.J.1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); and *Jones v. Superintendent*, 370 F.Supp. 488, 491 (W.D. Va. 1974).
>
> Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. *Fisher v. Woodson*, 373 F.Supp. 970, 973 (E.D. Va. 1973); *see also Balliet v. Whitmire*, 626 F.Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation ..."), *aff'd*, 800 F.2d 1130 (3d Cir. 1986) (Mem.).
>
> Further, it has also been held that a constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, *see Prisoners' Legal Ass'n*, 822 F.Supp. at 189, or under the Fifth Amendment's substantive due process clause, *see Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991).
>
> Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir.1992) (guard

> put a revolver to the inmate's head and threatened to shoot);
> *Douglas v. Marino*, 684 F.Supp. 395 (D.N.J. 1988) (involving a
> prison employee who threatened an inmate with a knife). It has
> also been found that verbal harassment can rise to a
> constitutional level in a situation where fulfillment of the threat
> was conditioned on the inmate's exercising some constitutionally
> protected right. *Bieros v. Nicola*, 860 F.Supp. 226, 233 (E.D.
> Pa.1994); *see also Prisoners' Legal Ass'n*, 822 F.Supp. at 189;
> *Murray*, 809 F.Supp. at 384.

*Wilkins v. Bittenbender*, 3:04-CV-2397, 2006 WL 860140, at *6 (M.D. Pa. Mar.

31, 2006), *appeal dismissed*, 06-2827, 2007 WL 708993 (3d Cir. Mar. 7, 2007)(per

curiam).

Powell, however, has not alleged that the purported harassment and verbal

threats were accompanied by the type of reinforcing physical act contemplated in

the cases relied upon by Judge Conaboy.   Similarly, Powell does not allege a

change in, or denial of, any constitutionally protected right or status accompanying

the alleged threats. In addition, for reasons similar to those stated in Part IV.B,

Powell fails to allege that the non-defendant SCI Huntingdon employees were

deliberately indifferent to his medical needs.   Powell's Eighth Amendment

supervisor liability claims, therefore, should be dismissed.[5]

---

[5]    To the extent that Powell has alleged a constitutional injury by pleading that
he was placed in the RHU following the filing of a false report, *see Doc.* 30 at ¶ 70,
he has nonetheless failed to allege a pattern or practice of such conduct that the
supervisory defendants were aware of, or reasonably aware of, such that they acted
with deliberate indifference to any complaints raised by Powell.   In fact, it is
unclear from Powell's amended complaint that he notified the defendants about the
false report, that the false report was actually pursued resulting in sanctions beyond

### D. Count III: ADA Discrimination.[6]

In support of his ADA claim, Powell contends that he is disabled in that his mental illness impairs his ability to think, communicate, and bathe. *Doc.* 35 at 13. Further, Powell contends that his mental illness and brain injury render him "unusually vulnerable, impressionable, and gullible." *Id.* (quoting from his amended complaint). Last, Powell contends that he was placed in the RHU solely because of his mental illness, which ultimately deprived him of access to numerous prison services. *Id.*

Under Title II of the ADA, discrimination is prohibited in connection with access to public services, requiring that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied

---

an initial stay in the RHU for investigative purposes, or that the report was actually false. *See Carpenter v. Kloptoski*, No. 1:08-CV-2233, 2013 WL 1410390, at *4 (M.D. Pa. Apr. 8, 2013) (discussing claims involving allegations of false reports in the retaliation context). Moreover, although Powell does not contend that it has any bearing on this particular claim, he has failed to allege a constitutional violation for being denied access to the courts, which will be discussed *infra*.

[6]      Relying on the same facts forming the basis for his ADA claim, Powell also raises a claim under the RA in Count IV. Except for their causation elements, the ADA and RA are coextensive and interpreted identically. *See C.G. v. Commonwealth of Pa.*, 734 F.3d 229, 235 (3d Cir. 2013); *Yeskey v. Commw. of Pennsylvania Dept. of Corrections*, 118 F.3d 168, 170 (3d Cir. 1997). The only additional element that the RA requires is that a plaintiff also allege that the defendant entity receives federal funding to support the activities it has denied to the plaintiff. Powell makes such an allegation in his complaint. *Doc.* 30 at ¶¶ 97, 116. Accordingly, for purposes of judicial economy, I will dispense with a separate analysis of Powell's RA claim.

Case 1:12-cv-02455-YK-SES   Document 44   Filed 02/25/14   Page 22 of 33

the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  It is also well established that state prisons are "public entities" as defined by Title II of the ADA. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Brown v. Pennsylvania Dep't of Corrections*, 290 F. App'x 463, 467 (3d Cir. 2008). Likewise, it is clear that the plain language of § 12132 applies only to "public entities" and not individuals.[7]

A plaintiff need not prove all elements of a *prima facie* ADA case in order to survive a motion to dismiss.  Rather, (s)he must allege only material facts that, "in addition to inferences drawn from those factual allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998).  To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from

---

[7]      Under Title II of the ADA, plaintiffs may sue for prospective injunctive relief against state officials. *See Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 179 (3d Cir. 2002)("[F]ederal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex Parte Young* doctrine.").  In his complaint, Powell does not name Wetzel as a defendant in Counts I, II, or V.  Regardless, he fails to allege that Wetzel had any personal involvement. *Rode*, 845 F.2d at 1207. It is inferred, however, that Powell intends to sue Wetzel in his official capacity under the ADA and RA.  *See also, Doc.* 35 at 17 (citing cases standing for the proposition that an official capacity suit is not one against the official, but against the state itself).  Regardless, as Powell's request for prospective injunctive relief is now moot by operation of his release from state custody, the only other forms of damages that he seeks are for retrospective relief. *See Doc.* 30 at 20.  Accordingly, Wetzel should be dismissed as a defendant.

participating in, or denied the benefit of, a public entity's services, programs or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *See* 42 U.S.C. § 12132; *Maresca v. Blue Ridge Communications*, No. 09-2470, 2010 WL 407127, *2 (3d Cir. Feb. 5, 2010) (citing *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006)). The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; [or] (B) a record of such an impairment; or, (C) being regarded as having such an impairment." See 42 U.S.C. § 12102(2).

In 2008, Congress amended the ADA by passing the ADA Amendments Act of 2008 ("ADAAA"). ADAAA, Pub. L. No. 110–325, 122 Stat. 3553 (2008). Congress did this in order to reinstate broad ADA coverage of individuals because of its conclusion that the Supreme Court in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 499, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), had improvidently narrowed the scope of protection intended to be afforded in the ADA. ADAAA, 122 Stat. 3553. Congress, thus, instructed the courts that they were interpreting the statute too restrictively. *Id*; *see also Lowe v. Am. Eurocopter, LLC*, No. 1:10CV24–A–D, 2010 WL 5232523, at *7 (N.D. Miss. Dec. 16, 2010) ("The ADAAA appears to have legislatively pre-empted the Supreme Court's past

definitions of 'substantially limits,' stating that the Court's standard was 'too high,' and that 'substantially limits' should be more broadly interpreted."). For instance, "Congress explicitly rejected *Toyota* and *Sutton* in an effort to promote a less restrictive interpretation of 'disability' under the ADA." *Fleck v. WILMAC Corp.*, No. 10–05562, 2011 WL 1899198, at *5 (E.D. Pa. May 19, 2011).  ADAAA, Pub. L. 110-325, 122 Stat. 3553 (2008).

However, under the ADA, it remains "'insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of an impairment.'" *Pritchett v. Ellers*, 324 F. App'x 157, 159 (3d Cir. 2009) (citing *Toyota*, 534 U.S. at 198). "Merely having an impairment does not make one disabled for the purpose of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota*, 534 U.S. at 195, 122 S.Ct. at 690. "Major life activities" are "those activities that are of central importance to daily life." *Id.* at 197; *see* 42 U.S.C. § 12102(2)(A)(providing a nonexclusive list of qualifying "major life activities"). Moreover, to prove disability, a plaintiff "must further show that the limitation on the major life activity is 'substantia[l].'" *Id.* As mentioned, in 2008 Congress clarified that this is not intended "to be a demanding standard." *See* 154 Cong. Rec. S8840-01 (2008); *see also* 42 U.S.C. §12102(4)(B)("The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments

Act of 2008."). A disability must, instead, be assessed on a case-by-case basis, as it is an individualized inquiry. *Toyota*, 534 U.S. at 198.

Last, disability discrimination "differs from discrimination in the constitutional sense" because the ADA has its own definition. *Melton v. DART*, 391 F.3d 669, 672 (5th Cir. 2004). Accordingly, under the ADA, discrimination may include a defendant's failure to make reasonable accommodations to the needs of a disabled person. *Id.*; *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination); *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation or denial of the benefits of the prison's services, programs or activities.") (internal quotation marks, brackets, ellipses, and citation omitted). Whether a request for an accommodation was made is a matter for summary judgment. *E.g., Wright v. Texas Dept. of Crim. Justice*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *5 (N.D. Texas Dec. 16, 2013).

Here, Powell alleges that he has been diagnosed with a delusional disorder, a mental illness that causes him to be unusually vulnerable, impressionable, and gullible. *Doc.* 30 at ¶¶ 30, 34. Given that the phrase "substantially limits" is to be interpreted broadly, I find that Powell has sufficiently alleged that he is a qualified individual with a disability for purposes of withstanding the defendants' motion to dismiss. Powell not only claims that he suffers from a mental illness, but he has provided examples demonstrating that his mental illness substantially limits his ability to think normally. Though, I note that nowhere in the complaint does Powell allege that he is unable to bathe himself. Rather, with respect to that contention, Powell alleges only that he did not take showers because of the purported misconduct engaged in by non-defendant corrections officers. I also find it noteworthy that although Powell argues that his mental illness substantially impacted his ability to communicate, his amended complaint is replete with allegations that he, in fact, communicated with the defendants. But again, given that the phrase "substantially limits" is to be interpreted broadly, I find that Powell has alleged enough, for purposes of withstanding this motion, that his mental illness substantially limited his cognitive abilities. Powell also plausibly alleges that he was denied access to prison activities and services.

Last, I find that Powell has sufficiently alleged that he was denied access to certain prison activities and services by reason of his disability, not for the

defendants' failure to provide reasonable accommodations.  Specifically, Powell alleges that he was placed in the RHU solely because of his mental illness, which resulted in the loss of the activities and services complained of in his amended complaint.

The defendants' reliance on *Goins v. Beard*, No. 09-CV-1223, 2011 WL 4345874 (W.D. Pa. Sept. 15, 2011)(Kelly, Mag. J.) is misguided.  In *Goins*, the plaintiff's complaint arose out of his placement and transfer to a more controlled Special Management Unit ("SMU") as a result of an assault on a staff member. *Goins*, 2011 WL 4345874, at *1.  The plaintiff alleged that because he was mentally ill, he was entitled to an in-person psychological evaluation prior to SMU confinement.  *Id.* at *12.  In dismissing the plaintiff's ADA claim, the court concluded that the plaintiff failed to allege that his placement in the SMU, for having a misconduct report, constituted disparate treatment based upon his alleged mental illness.  *Id.* at *12.  The court was not presented with the issue that is posed here, where Powell alleges that he was placed in the RHU because of his mental illness and not for any disciplinary reason.  Similarly, the defendants' reliance on *Scherer v. Pennsylvania Dept. of Corrections*, No. 3:04-CV-191, 2007 WL 4111412 (W.D. Pa. Nov. 16, 2007) is misguided, because that case concerned the classification and housing of a mentally ill prisoner, who was also subject to disciplinary action for a misconduct report and argued that his mental illness

27

should have factored into his discipline.  Whether Powell was in fact detained in the RHU for a disciplinary or safety reason is a matter better-suited for discussion on a summary judgment motion.  Powell's claim, therefore, should be permitted to proceed.

### E. Count V: Fourteenth Amendment - Access to Courts.

Powell claims that he was denied access to the courts, under the Fourteenth Amendment's Due Process Clause, in that "he was unable to bring this action to obtain relief earlier although the abusive practices … have been ongoing for many years."  *Doc.* 30 at ¶ 106.  According to Powell, he was denied access to the courts by being denied access to the prison law library, denied access to legal assistance from other prisoners, and denied assistance to read and interpret prison regulations for filing grievances.  *Doc.* 30 at ¶¶ 98, 99-100; *Doc.* 35 at 14.  As well, Powell alleges that the defendants discouraged him from using the grievance process and gave him misdirection about the possibility of taking legal action.  *Doc.* 30 at ¶¶ 103-05; *Doc.* 35 at 14.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Id.* at 828.  The right that *Bounds* acknowledged was the already well-

28

established right of access to the courts; a right that provides some effective vindication for a separate and distinct right to seek judicial relief for some wrong. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  What the *Bounds* Court did not do was establish a prisoner's right to a law library or to legal assistance.  *Lewis v. Casey,* 518 U.S. 343, 350 (1996).

In other words, according to the Court, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 351 (quoting *Bounds*, 430 U.S. at 825). As such, prisoners must go one step further and allege actual injury, "such as the loss or rejection of a legal claim." *Oliver v. Fauver*, 118 F.3d 175, 177 (3d Cir. 1997). This requirement, derived from principles of standing, is an unwaivable constitutional prerequisite. *See Lewis*, 518 U.S. at 351.

The access-to-courts cases further rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered an injury. *Harbury*, 536 U.S. at 415.  It follows that the underlying cause of action is an element that must be described in the complaint, just as much as the allegations must describe the official acts frustrating the litigation.  *Id.*  To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope,"

29

and it must describe the "lost remedy." *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008) (citing *Harbury*, 536 U.S. at 416-17).   Last, in the prison context, this right of access-to-courts is limited to two types of underlying causes of actions: (1) a prisoner's challenge to their sentences (direct or collateral) and (2) conditions of confinement.  *Lewis*, 518 U.S. at 354-55.

In this matter, Powell complains about how the defendants allegedly interfered with his ability to file this case sooner.  *Doc.* 30 at ¶ 106; *Doc.* 35 at 14. But, I am hard-pressed to find that he has alleged a plausible actual injury anywhere in his amended complaint.   While the alleged conduct on behalf of the corrections officers is unacceptable and troubling, Powell presently has a chance to assert his rights for perceived wrongs, where a remedy could be made available to him.   That Powell lost his right to pursue injunctive relief by operation of his release from prison is equally unavailing given that the focus here is on the loss or rejection of a claim not a singular remedy.   Accordingly, given that Powell is presently litigating in court, where other remedies are still available to him, Powell's access-to-courts claim should be dismissed.

**F.  The Defendants' Motion to Strike**.

In addition to seeking an outright dismissal, the defendants move to strike several paragraphs in Powell's amended complaint.  As mentioned *supra*, these types of motions are not favored by federal courts and should generally be denied

30

unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one of more of the parties to the action.   For the most part, the paragraphs in Powell's amended complaint that the defendants move to strike are material, pertinent, and not scandalous.   I have my concerns about paragraph 80, however.

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court may strike from a pleading "an insufficient defendant or any redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  "Immaterial matter is that which has no essential or important relationship to the claim for relief." *Delaware Health Care. Inc. v. MCD Holding Co.*, 893 F.Supp. 1279, 1291-92 (D. Del. 1995) (citing 5A C. Wright & A. Miller § 1382, at 706-07). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*; *Cech v. Crescent Hills Coal Co.*, 2002 U.S. Dist. LEXIS 15731, 15747, 2002 WL 31002883 (W.D. Pa. 2002). There is considerable overlap between the concepts of "immaterial" and "impertinent" statements under Rule 12(f). *River Road Dev. Corp.*, 89-CV-7037, 1990 WL 6092 (E.D. Pa. Jan. 25, 1990)(Vanartsdalen, J.).  "'Scandalous matter' has been defined as 'that which improperly casts a derogatory light on someone, most typically on a party to the action.'" *Carone v. Whalen*, 121 F.R.D. 231, 233 (M.D. Pa. 1988) (Conaboy, J.); 5

C. Wright & A. Miller § 1382, at 826. "Scandalous pleading" must "'reflect cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court.'" *Carone*, 121 F.R.D. at 233 (citing *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1221 (D.N.J. 1984)).

In paragraph 80, Powell attacks the character and integrity of the Pennsylvania Department of Corrections, its employees, and its counsel. Also, that particular paragraph is not crucial to any of Powell's claims. Rather, Powell could have achieved the same objective without including the statements contained in paragraph 80. Accordingly, paragraph 80 should be stricken from the amended complaint because it contains scandalous matters and is impertinent to Powell's claims.

## V.    <u>Recommendation.</u>

Based on the foregoing, **IT IS RECOMMENDED** that:

(1) The defendants' motion to dismiss and to strike (*Doc.* 31) be **GRANTED IN PART** and **DENIED IN PART**:

    (a) The defendants' dismissal motion should be **GRANTED** with respect to Counts I, II, and V;

    (b) The defendants' dismissal motion should be **DENIED** with respect to Counts III and IV; and

    (c) The defendants' motion to strike should be **GRANTED** with respect

to paragraph 80 of the amended complaint.

(2) The case should be **REMANDED** to the undersigned for further pre-trial

proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **25th** day of **February, 2014**.


                                                    **S/ Susan E. Schwab**
                                                    Susan E. Schwab
                                                    United States Magistrate Judge