# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN POWELL, | : | CIVIL NO. 1:12-CV-2455 |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction.

The plaintiff, Kevin Powell, is a former state prisoner who has raised claims pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 701 *et seq.* The defendant is the Pennsylvania Department of Corrections (DOC). We granted Powell leave to file a second amended complaint. The DOC appealed that decision, and Judge Kane remanded Powell's motion for leave to file a second amended complaint to the undersigned for reconsideration. For the following reasons, we recommend that Powell's motion be granted.

## II.    Background and Procedural History.

On December 6, 2012, while a state prisoner, Powell initiated this action by filing a *pro se* complaint. *Doc. 1*.[1]   Counsel later entered her appearance for Powell, and through counsel, Powell filed an amended complaint on March 7, 2013. *Doc.* 30.   In his amended complaint, Powell named six defendants: (1) John Wetzel, the DOC Secretary; (2) Tabb Bickell, the Superintendent at the State Correctional Institution in Huntingdon, Pennsylvania (SCI-Huntingdon); (3) Mark Garman, a Deputy Superintendent at SCI-Huntingdon; (4) William Walters, a Major in Charge of Unit Management at SCI-Huntingdon; (5) Timothy Johnson, a Lieutenant at SCI-Huntingdon; and (6) the DOC. *Id.* at 2-3.   Powell's amended complaint asserted causes of action arising under 42 U.S.C. § 1983 as well as the ADA the RA. *Id*. at 1-2.

The defendants filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6)  and, alternatively, to strike certain paragraphs of the amended complaint pursuant to Fed. R. Civ. P. 12(f). *Doc. 31*.  Judge Kane granted the defendants' motion in part and denied it in part.  Specifically, she dismissed the constitutional claims brought pursuant to 42 U.S.C. § 1983, allowed the ADA and

---

[1]  Although the complaint was not docketed until December 10, 2012, Powell dated the complaint December 6, 2012.  Giving Powell the benefit of "prisoner mailbox rule," which "provides that a document is deemed filed on the date it is given to prison officials for mailing," *Pabon v. Mahanoy*, 654 F.3d 385, 391 (3d Cir. 2011), we use December 6, 2012, as the date this action was commenced.

RA claims to proceed, and remanded the case to the undersigned for further pre-trial management. *Doc. 50.*

The defendants then filed an answer to the amended complaint, and the individual defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Docs. 52 & 53.* Before reaching the merits of that Rule 12(c) motion, we held a case management conference, during which it became apparent that the parties disputed the scope of the amended complaint and contested whether the remaining ADA and RA claims reached back two years prior to Powell's transfer to SCI-Huntingdon. Because we did not have the benefit of briefing on that issue, we permitted the defendants to file a second motion for judgment on the pleadings, and we deferred entering a case management order. *Doc. 59.* The defendants then filed a second motion for judgment on the pleadings regarding the remaining ADA and RA claims. *Doc. 63.*

After briefing, we recommended that the Court grant both of the defendants' motions for judgment on the pleadings and remand the case for further pre-trial management. *Doc. 69.* On March 27, 2015, Judge Kane issued a Memorandum and an Order overruling objections filed by Powell, adopting our Report and Recommendation in part, and dismissing with prejudice the claims against the individual defendants. *Doc. 72* at 1; *Doc. 73.* Judge Kane limited Powell's amended complaint to "events beginning with [his] transfer to State Correctional

Institution-Huntingdon." *Doc. 73.*   But Judge Kane also left the door open for Powell to seek leave to file a second amended complaint, stating specifically that "[Powell] may seek leave to amend his amended complaint to expand the chronological scope of this litigation." *Id.*

On April 2, 2015, Powell filed a motion for leave to file a second amended complaint and a brief in support of that motion. *Docs. 74 & 75.*   Without waiting for full briefing, we granted Powell's motion, and on April 3, 2015, Powell filed his second amended complaint. *Docs. 76 & 77.*   Like the amended complaint, the second amended complaint contains ADA and RA claims.   The second amended complaint differs, however, in a key aspect that speaks to the core of the parties' present dispute: unlike the amended complaint, which was construed to only encompass events while Powell was incarcerated at SCI-Huntingdon, the second amended complaint expands the timeframe at issue to encompass events while Powell was incarcerated at SCI-Smithfield, at SCI-Fayette, and at SCI-Somerset as well as at SCI-Huntingdon. *Doc. 77* at ¶14.   In order to properly understand this expansion, we first observe the dates of Powell's incarceration at the relevant institutions:

(1)    SCI-Smithfield from August of 2010 until December 7, 2010;

(2)    SCI-Fayette from December 7, 2010 until November of 2011;

(3)    SCI-Somerset from November of 2011 until August of 2012; and

4

(4)     SCI-Huntingdon from August of 2012 until August 2, 2013, the date
        on which the DOC released him.

*Doc. 77* at ¶ 14.  We next observe the dates that are encompassed in Powell's

original complaint, amended complaint, and second amended complaint.  Powell's

original complaint encompasses events that begin in September of 2012 and end in

December of 2012; thus, his original complaint only encompasses events

that occurred at SCI-Huntingdon.   Powell's amended complaint encompasses

events that begin in November of 2012 and end in February of 2013; thus,

Powell's amended complaint, like his original complaint, only encompasses events

that occurred at SCI-Huntingdon.  Powell's second amended complaint, however,

encompasses events that begin in August of 2010 and end in August of 2013; thus,

Powell's second amended complaint, unlike his original and amended complaints,

encompasses events that occurred at SCI-Huntingdon, as well as events that

occurred at SCI-Smithfield, SCI-Fayette, and SCI-Somerset—the three institutions

at which Powell was incarcerated before he was transferred to, and ultimately

released from, SCI-Huntingdon.

Recognizing this expansion, we now turn to the allegations in the second

amended complaint.  Specifically, Powell alleges that he has delusional disorder;

that because of that illness combined with his low IQ, he is unusually vulnerable,

impressionable, and gullible; that DOC staff did not assist him in understanding

and using prison policies; that at each prison he spent much or all of his time

confined in the Restricted Housing Unit (RHU) because of his mental disabilities; and that he repeatedly submitted requests for safer and more appropriate housing. *Doc. 77* at ¶¶ 5-9, 14-18.   A recurring theme in many of Powell's  requests is that DOC staff at the central office caused him to be confined to the RHU for the express purpose of murdering him, torturing him, and denying him medical treatment.   *Id*. at  ¶¶ 19-20.   Powell alleges that he lost access to services, programs, and activities whenever he was confined in the RHU. *Id*. at ¶¶ 23-24. He also alleges that on one occasion in February of 2013, while confined in the RHU and while having "a visit" via video link, a corrections officer ordered him to stand and roughly dragged him to his feet without disengaging his restraints, thus causing him to fall and strike his head.  *Id*. at ¶ 29.  Powell alleges that he suffered "daily anguish and indignity" in the RHUs, that this mental and physical condition deteriorated, that he was denied psychiatric treatment and psychological counseling, and that he was forced to interact with staff who lacked the training necessary to handle the needs of mentally disabled prisoners.  *Id*. at ¶¶ 30-32.  And he alleges that he sank deeper into mental illness because of the cruel taunting and baiting by DOC staff, which was calculated to exploit his emotional vulnerabilities, heighten his symptoms, and exacerbate his suffering. *Id*. at ¶ 33.  The second amended complaint contains two claims: an ADA claim that the DOC denied Powell participation in activities and services to which he would have had access

were it not for his mental illness and disabilities; and an RA claim that the DOC denied Powell a range of services that are supported in part by federal funding by reason of his mental illness and disabilities. *Id*. at ¶¶ 35-40.  He seeks declaratory relief as well as compensatory and punitive damages.  The only defendant named in the second amended complaint is the DOC.

The DOC filed a motion, and brief in support, requesting the Court to reconsider and vacate our Order granting Powell's motion for leave to file a second amended complaint. *Docs. 78 & 79*.  The DOC also filed a brief in opposition to Powell's motion for leave to file a second amended complaint. *Doc. 80*.  We denied the DOC's motion by an Order dated April 8, 2015. *Doc. 81*.  The DOC appealed that Order two days later. *Doc. 82 & 83*.  Powell filed a response opposing the appeal, and asked for Rule 11 sanctions against defense counsel. *Doc. 87*.  The DOC subsequently filed a reply brief and opposed the request for sanctions. *Doc. 89*.  In the meantime, the DOC also filed a motion to dismiss the second amended complaint, which was fully briefed. *Docs. 84-86 & 88*.

On March 31, 2016, Judge Kane granted the DOC's appeal in part, but not for the reasons set forth by the DOC. *Doc. 91* at 2 ("The Court will grant Defendants' appeal in part and order reconsideration of the disposition of Plaintiff's motion to amend, but not on the basis Defendants have put forward."). Instead, Judge Kane asks us to consider recent jurisprudential developments that

may impact Powell's motion to amend. *Id.* Judge Kane notes that since our Order denying the DOC's motion for reconsideration, the United States Court of Appeals for the Third Circuit has issued a *per curiam*, unpublished decision in *Wadis v. Norristown State Hosp.*, 617 F. App'x 133 (3d Cir. 2015), affirming a holding reached by United States District Court for the Eastern District of Pennsylvania, which refused "to permit amendment where the prisoner-plaintiff's new claims would have been barred by the statute of limitations." *Doc. 91* at 2 (citing *Wadis*, 617 F. App'x 133). Judge Kane also points to *Gonzalez v. Hasty*, 802 F.3d 212 (2d Cir. 2015), a recently published persuasive opinion issued by the United States Court of Appeals for the Second Circuit, which considered "the applicability of the continuing violations doctrine to [§] 1983 prisoner suits." *Doc. 91* at 2 (citing *Gonzalez*, 802 F.3d 212). Accordingly, Judge Kane remanded this matter to the undersigned "with instructions to reconsider [Powell's] motion to amend his complaint, taking into account *Wadis* and any other recent jurisprudence." *Doc. 91* at 2.[2]

---

[2] Judge Kane also dismissed the DOC's motion to dismiss the second amended complaint without prejudice to refiling after the Court reconsiders Powell's motion for leave to file a second amended complaint.

### III.  Leave-to-Amend Standard.

We note at the outset that Rule 15 of the Federal Rules of Civil Procedure "embodies a liberal approach to amendment" and states that "leave shall be freely given when justice so requires" unless other factors weigh against such relief. *Palakovic v. Wetzel*, No. 3:14–145, 2015 WL 3937499, at *12 (W.D. Pa. June 26, 2015) (quoting *Dole v. Arco Chemical Co.,* 921 F.2d 484, 486–87 (3d Cir. 1990)). "A district court may deny leave to amend a complaint where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quoting *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir. 2000)).

The DOC contends that amendment would be futile because the claims that Powell seeks to add by way of his second amended complaint are barred by the statute of limitations.[3]  "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).  "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id.*

---

[3]  Although the DOC attempts to raise some issues other than futility in documents pertaining to the present motion, *see docs. 79, 80, 82, 83, & 89*, its arguments are either unpersuasive or largely unsupported by dispositive case law.

(quoting *In re Merck & Co. Sec., Derivative, & ERISA Litig.,* 493 F.3d 393, 400 (3d Cir. 2007)).  Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *Id.* "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'" *Id.* (quoting *Winer Family Trust v. Queen,* 503 F.3d 319, 330–31 (3d Cir. 2007)).

## IV.  Discussion.

With the spirit of Rule 15 in mind, we turn to Judge Kane's Order, instructing us to reconsider Powell's motion for leave to file a second amended complaint, "not on the basis [the DOC has] put forward," but through the lens of *Wadis*, *Gonzales*, and any other relevant legal developments that may prohibit "amendment where the prisoner-plaintiff's new claims would [be] barred by the statute of limitations." *Doc. 91* at 2.  Essentially, our inquiry is whether expanding this litigation's "chronological scope" runs afoul of the applicable statute of limitations.

"A statute of limitations defense is an affirmative defense that a defendant must usually plead in his answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015).  Although the statute of limitations is an affirmative defense, a court can dismiss a complaint based on the statute of limitations when "the complaint

facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir.1994).  But "'[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). And "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt*, 770 F.3d at 251.  "Thus, if 'the pleading does not reveal when the limitations period began to run,' then 'the statute of limitations cannot justify Rule 12 dismissal.'" *Stephens*, 796 F.3d at 288 (quoting *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)). Given that the question whether allowing amendment would be futile is determined by the same standard as a 12(b)(6) motion, leave to amend is futile based on the statute of limitations only if it is clear from the face of the proposed amended complaint that the statute of limitations bars the action.

"Neither Title II of the ADA nor Section 504 of the RA includes an express statute of limitations." *Disabled in Action of Pennsylvania v. S.E. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008).  Here, the parties do not dispute that the applicable statute of limitations for Powell's claims under the ADA and the RA is

the two-year statute of limitations borrowed from Pennsylvania for actions for personal injuries. *See id.* Even when a statute of limitations is borrowed from state law, however, federal law governs "what constitutes accrual." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A cause of action "'accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" *Id.* at 185-86 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)). In other words, the cause of action accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (citations omitted). Thus, "[u]nder federal law, a cause of action accrues ""when the plaintiff knew or should have known of the injury upon which the action is based.'"" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009), which in turn was quoting *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir. 1998)). "The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). When the statute of limitations is borrowed from state law, "[s]tate law, unless inconsistent with federal law, . . . governs the concomitant issue of whether a limitations period should be tolled." *Dique,* 603 F.3d at 185.

Powell filed his motion for leave to file a second amended complaint on April 2, 2015; therefore, any claim that accrued prior to April 2, 2013, is barred by the statute of limitations, unless Powell can take advantage of the relation-back doctrine under Fed. R. Civ. P. 15(c) or a tolling doctrine to circumvent the two-year limitations period.  We address each of those doctrines below as well as the continuing-violation doctrine

### A.  The Relation-Back Doctrine.[4]

Under Judge Kane's guidance, we first consider *Wadis*.  *See doc. 91* at 2.  In *Wadis*, a *pro se* prisoner alleged a § 1983 claim against two individuals and the Norristown State Hospital.  *Wadis*, 617 F. App'x. at 134.  The United States District Court for the Eastern District of Pennsylvania dismissed the plaintiff's complaint for failure to state a claim upon which relief could be granted and noted that the plaintiff had not identified nor served the defendants.  *Id.* at 134-35.  The plaintiff filed a motion for leave to file an amended complaint and sought to add new defendants and expand his claims.  *Id.* at 135.  The District Court denied the plaintiff's motion, briefly explaining that the statute of limitations had expired and

---

[4]   Judge Kane remanded the case for us to consider the relation-back doctrine. Because of the procedural posture of the case, Powell has not filed a reply brief in support of his motion for leave to amend.  But because the DOC raised the relation-back doctrine in its appeal of our order denying its motion for reconsideration, Powell had an opportunity to address the issue.  Although Powell only touched on the issue in his brief in opposition to the appeal, he nevertheless had the opportunity to address the issue.  Thus, we will address the issue.

that the plaintiff had shown no basis for the proposed amendment to relate back to the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure. *Id.* In an unpublished opinion, the United States Court of Appeals for the Third Circuit affirmed the District Court's denial of the plaintiff's motion, explaining that the statute of limitations had expired and that the plaintiff's proposed amendment set forth new claims that did not relate back to the original complaint. *Id.* at 136. According to the *Wadis* court, an amendment "'relates back to the date of the original pleading' when it 'asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading.'" *Id.* at 135 (quoting Fed. R. Civ. P. 15(c)(1)(B)). "[A]mendments 'that significantly alter the nature of a proceeding by injecting new and unanticipated claims'[, however,] are treated with great caution for relation back purposes." *Id.* at 135-36 (quoting *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) (quoted case and quotation marks omitted)).

*Wadis*, therefore, counsels[5] us to address whether Powell's second amended complaint is time-barred, and if so, whether Powell can take advantage of the relation back doctrine.

---

[5] We note that *Wadis* discussed statute of limitations principles in the context of a § 1983 claim. Here, Powell's § 1983 claim has already been dismissed, and the remaining claims at issue in his second amended complaint are ADA and RA claims.

### 1. Standards for the Relation Back Doctrine.

"Relation back is structured 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Glover v. Fed. Deposit Ins. Corp.,* 698 F.3d 139, 145 (3d Cir. 2012) (quoting *Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 550 (2010)).  "If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003).  "The relation back provision of Rule 15(c) aims to ameliorate the harsh result of the strict application of the statute of limitations." *Id.*

Federal Rule of Civil Procedure 15(c)(1) provides when an amendment relates back to the date of an earlier pleading:

> **(1)** *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> **(A)** the law that provides the applicable statute of limitations allows relation back;
> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A) "gives a party the benefit of whichever standard for relation back is most lenient"—the state standard or the federal standard under the remaining provisions of Rule 15(c)(1). *Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153, 157 (3d Cir. 2014). Generally, "Pennsylvania courts do not take a more lenient approach to the relation back doctrine than do federal courts." *Urrutia v. Harrisburg Cty. Police Dep't*, 91 F.3d 451, 457 (3d Cir. 1996). And, here, Powell has not argued that Pennsylvania law is more lenient than federal law. Thus, we turn to Rule 15(c)(1)(B).

Under Fed. R. Civ. P. 15(c)(1)(B), "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005). Thus, "proposed amendments relate back if they 'restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading.'" *Anderson*, 552 F. App'x at 157 (quoting *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir. 2004)). But an amendment "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading

16

set forth." *Mayle,* 545 U.S. at 650.  Fair notice is the touchstone of relation back: "where the original pleading does not give a defendant 'fair notice of what the plaintiff's [amended] claim is and the grounds up on which it rests,'" an amendment does not relate back to the date of the original pleading. *Glover,* 698 F.3d at 146 (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)).  "Put another way, the underlying question for a Rule 15(c) analysis is 'whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'" *Id.* at 146 (emphasis in original) (quoting *Meijer, Inc. v. Biovail Corp.,* 533 F.3d 857, 866 (D.C. Cir. 2008)).

### 2. The Relation Back Doctrine Does Not Save the Second Amended Complaint From Being Barred by the Statute of Limitations.

Here, the Court has already determined that Powell's amended complaint "is limited to events beginning with [his] transfer to [SCI-Huntingdon]." *Doc. 73*. According to Powell, he was transferred to SCI-Huntingdon in August of 2012. *Doc. 77* at ¶ 14.   His second amended complaint, however, includes events that precede his transfer to SCI-Huntingdon, specifically events at SCI-Smithfield, SCI-Fayette, and SCI-Somerset and his confinement in the RHUs at those institutions. This is a span of time that reaches back to August of 2010 and stretches the whole way to August 2, 2013.    Thus, because Powell's amended complaint is based on

facts that differ in both time and type from the facts in his second amended complaint, we find that the amended complaint and the second amended complaint are not based on a common core of operative facts.    We further find that the amended complaint did not provide the DOC with fair notice of the claims in the second amended complaint.    Consequently, Powell's second amended complaint does not relate back to the date of his amended complaint.

The second amended complaint also does not relate back to the date of the original complaint.  Like the amended complaint, the original complaint concerns events that happened at SCI-Huntingdon.  The original complaint also alleges that on September 25, 2012, Secretary Wetzel ordered the central office to transfer Powell to SCI-Huntingdon in retaliation for Powell exercising his legal rights by speaking out about purported wrongdoing at his prior place of imprisonment. *Doc. 1* at ¶1.    The original complaint does not, however, contain allegations about events at, and Powell's confinement in, the RHUs at SCI-Smithfield, SCI-Fayette, and SCI-Somerset.  Thus, his second amended complaint is based on facts that differ in both time and type from the facts in the original complaint.  The second amended complaint and the original complaint are not based on a common core of operative facts, and the original complaint did not provide the DOC fair notice of the claims in the second amended complaint.  Accordingly, the second amended complaint does not relate back to the date of the original complaint.

In sum, relation back does not save the second amended complaint from being barred by the statute of limitations.[6]

## B. The Administrative-Tolling Doctrine.

Given that relation back does not apply, we turn to the issue of tolling. The only tolling doctrine that Powell raises is administrative tolling. Powell argues that prisoners' claims accrue only after administrative relief for an injury has been finally denied. *Doc. 87* at 10-11. Powell thus avers that the limitations period was tolled while he sought administrative relief. *See Id.* at 11.

In *Pearson v. Secretary Dept. of Corrections*, 775 F.3d 598, 603 (3d Cir. 2015), the Third Circuit held that the statute of limitations in a 42 U.S.C. § 1983 action brought by a prisoner is tolled while the prisoner exhausts his or her administrative remedies. There is no basis to conclude that the same does not apply when a prisoner brings an ADA or RA claim based on prison conditions, and the parties accept that the statute of limitations was tolled while Powell exhausted administrative remedies. In fact, the DOC concedes that Powell "may be correct as to the tolling point generally," but argues that it "does not save his added claims

---

[6] We note that the DOC was not named as a defendant in the original complaint. The DOC was, however, named as a defendant in the amended complaint, as well as the second amended complaint. Fed. R. Civ. P. 15(c)(1)(C), which applies when an amendment changes a party or the name of a party, requires the standard under 15(c)(1)(B) to be met as one of its elements. Because, as discussed above, Powell does not satisfy 15(c)(1)(B), it necessarily follows that he also does not satisfy 15(c)(1)(C).

from being time-barred." *Doc. 89* at 4.   The DOC claims that the statute of limitations period begins to run on the "date the actions accrued" and estimates that, in this case, "[those] dates will be between August 2010 to August 2012, the 3 separate placements in the 3 separate RHUs at the 3 different prisons."   *Id.* Because the motion to amend the first amended complaint was filed on April 2, 2015, the DOC avers that Powell's added claims are "facially" time-barred. *Id.* at 4.

Although tolling applies, the problem here is that we do not have sufficient information regarding the dates when Powell was exhausting his administrative remedies to identify the time period that the statute of limitations was tolled. Powell alleges that he submitted numerous grievances and other requests prior to December 6, 2010, all of the which the DOC denied after that date.  *Doc. 77* at ¶ 17.   He also alleges that between December 6, 2010, and August 2, 2013, he submitted many more requests and grievances seeking appropriate housing and protesting his confinement in the RHU.  *Id*.  According to Powell, many of those requests were ignored or wrongfully denied.  *Id*.  Powell also mentions numerous requests and statements that he submitted in conjunction with misconduct reviews and other reviews of his placement in the RHU throughout the last three years of his incarceration. *Id*. at ¶ 19.  Further, he refers to numerous other requests for assistance and asserts that he made some of those while he was at SCI-Smithfield

in 2010. *Id*. at ¶ 20.   In sum, Powell alleges that he submitted many requests from August of 2010 to August of 2013, and although staff replied to some of his requests, the DOC did not provide him with any accommodation of his disability or assign him appropriate housing. *Id*. at ¶ 22.   While Powell alleges that he submitted numerous administrative-remedy requests while incarcerated, we cannot determine the dates on which those remedies were pending.

The other problem, here, is that there are three *potential* processes at play for the exhaustion of Powell's administrative remedies.   Those processes are as follows: (1) DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities; (2) DC-ADM 801, Inmate Discipline; and (3) DC-ADM 804, Inmate Grievance System.   The parties, however, have not specified which process or processes apply, nor have they specified how long it would have generally taken Powell to complete each process.   Nevertheless, we acknowledge that absent the applicability of some other doctrine, such as the continuing-violation doctrine, it is doubtful that Powell's claims that accrued at prisons other than SCI-Huntingdon will be saved by administrative tolling given the length of time the claims would need to be tolled.   Powell alleges that he was at SCI-Smithfield from August of 2010 to December 7, 2010, at SCI-Fayette from December 7, 2010 to November of 2011, and SCI-Somerset from November of 2011 to August of 2012. *Doc. 77* at ¶ 14.   Thus, in order for administrative tolling to save his claims, he would need to

have been exhausting administrative remedies for claims that accrued while he was at SCI-Somerset for at least seven months, i.e. from August of 2012 (the latest he was at SCI-Somerset) until April 2, 2013 (two years before he filed his motion for leave to file a second amended complaint). And he would need to have been exhausting his claims that accrued at SCI-Fayette for at least 16 months, i.e., from November of 2011 (the latest he was at SCI-Fayette) until April 2, 2013. And even longer—almost 28 months— for claims that accrued at SCI-Smithfield, i.e., from December 7, 2010 (the latest he was at SCI-Fayette) until April 2, 2013. Thus, the aforementioned lengths of time make it improbable that tolling will ultimately save Powell's claims.

Nevertheless, given the lack of briefing as to which DC-ADM process applies, and given the lack of information about the specific dates that Powell was exhausting his administrative remedies, we cannot say as a matter of law based on the face of the complaint that the statute of limitations bars his claims regarding the events that occurred at SCI-Smithfield, SCI-Fayette, and SCI-Somerset. *See Washington-El v. Collins*, No. 3:12-CV-1979, 2013 WL 4498830, at *3 (M.D. Pa. Aug. 20, 2013) (denying motion to dismiss on the basis that the Court could not "determine from the face of the complaint how long [plaintiff's] grievances were pending and it would be improper to dismiss all claims . . . as time-barred"); *Thomas v. Palakovich*, No. 3:11-CV-2172, 2012 WL 1079441, at *4 (M.D. Pa.

Mar. 30, 2012) (concluding that "because Mr. Thomas's complaint does not indicate how long he was involved in the administrative grievance process, it is possible that the tolling of the statute of limitations during that process would make his claims timely" and thus concluding that dismissal was inappropriate); *Ozoroski v. Maue*, No. 1:08-CV-0082, 2009 WL 414272, at *7 (M.D. Pa. Feb. 18, 2009) (denying 12(b)(6) motion to dismiss because the court was unable to determine the dates when administrative tolling would apply); *but see Pearson v. Williams*, No. 1:CV-13-1988, 2015 WL 1061585, at *3 (M.D. Pa. Mar. 11, 2015) (concluding that complaint that was filed four months after the statute of limitations should not be dismissed as untimely given that some of those four months might have been taken up with plaintiff's pursuit of his administrative remedies, but concluding that the amended complaint was not saved by tolling given that it was filed 17 months after the statute of limitations, "far beyond any reasonably possible limitations period"). Thus, refusal to allow amendment is not warranted. The DOC, however, can raise the statute of limitations on a more developed record at the summary-judgment stage.

## C. The Continuing-Violation Doctrine.

We also consider Judge Kane's instruction to examine *Gonzales v. Hasty*, 802 F.3d 212 (2d Cir. 2015), which discusses the applicability of the continuing-violation doctrine to § 1983 prisoner suits. *Doc. 91* at 2. In *Gonzales*, a federal

23

prisoner instituted a *pro se Bivens* action against a warden of two federal prison facilities and various personnel at those facilities, alleging First, Fifth, and Eighth Amendment claims. *Gonzales*, 802 F.3d at 217, 218. The United States District Court for the Eastern District of New York granted the defendants' motion to dismiss because the prisoner-plaintiff failed to file his complaint within the three-year statute of limitations period that is applicable to a *Bivens* claim. *Id.* at 215, 218-19. And, specifically, the District Court determined that the continuing-violation doctrine did not apply to any of the plaintiff's claims. *Id.* On appeal, the United States Court of Appeals for the Second Circuit carefully analyzed the plaintiff's claims and ultimately determined that although the continuing-violation doctrine should not be applied to claims that are based on wrongful "discrete acts," each of which would start the running of the statute of limitations period (i.e., the plaintiff's First and Fifth Amendment claims), the doctrine should be applied to claims that are based on a "threshold period" of wrongdoing (i.e., the plaintiff's Eighth Amendment claim). *Id.* at 221-24. In support, the *Gonzales* court explained that the plaintiff's Eighth Amendment claim "accrued only after the defendants had confined [the plaintiff] in the [special housing unit] for some threshold period of time." *Id.* at 224.

*Gonzales*,[7] therefore, counsels us to address whether Powell's second amended complaint is time-barred, and if so, whether Powell can take advantage of the continuing-violation doctrine.

### 1. Standards for the Continuing-Violation Doctrine.

"The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Gonzales*, 802 F.3d at 220 (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). " A

"Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile . . . environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). "This doctrine operates as a type of tolling and is often applied to address injuries that are the 'collective result of many non-actionable' slights." *Patterson v. Strippoli*, 639 F. App'x 137, 141 (3d Cir. 2016) (quoting *Major Tours, Inc. v. Colorel,* 799 F.Supp.2d 376, 387 n.3 (D.N.J. 2011)); *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (noting that the doctrine applies to hostile-environment claims, which are

---

[7] We note that *Gonzales* discussed the continuing-violation doctrine in the context of a *Bivens* action brought by a plaintiff who alleged First, Fifth, and Eighth Amendment claims, none of which we have here. The only remaining claims at issue here, however, are ADA and RA claims.

"designed explicitly to address situations in which the plaintiff's claim is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant").   Under the continuing-violation doctrine, "[i]t does not matter, . . . that some of the component acts of the hostile . . . environment fall outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).   "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*   Thus, "[t]o allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful  . . . practice and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165-66.   The "focus 'is on affirmative acts of the defendants.'" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001)).   Further, appropriate considerations in distinguishing continuing violations from isolated occurrences include the frequency of the alleged acts and the subject matter of the acts, i.e., "whether the violations constitute the same type of discrimination." *Mandel*, 706 F.3d at 166 n.2.   Discrete acts that are individually actionable, however, constitute separate unlawful practices and cannot be aggregated into a hostile-environment claim. *Morgan*, 536 U.S. at 113-14.   "[T]he continuing violation doctrine does not apply when the plaintiff 'is aware of the

26

injury at the time it occurred.'" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003)).

### 2. The Applicability of the Continuing Violation Doctrine Cannot be Determined at this Stage.

Here, because the parties have not briefed the issue of the applicability of the continuing-violation doctrine, because a conclusion on the applicability of the doctrine is not necessary at this time given that, as discussed above, administrative tolling may apply, and because further factual development may assist the court in the analysis of whether the doctrine applies, we do not make a determination on this issue at this time.   Like the administrative tolling doctrine issue, the continuing-violation doctrine issue can also be raised after further factual development at the summary judgment stage.

### D. Supplementation.

Not only does Powell seek to expand the time frame of this litigation by including events that occurred at prisons before he was incarcerated at SCI-Huntingdon, he also seeks to expand the time frame by including events that occurred at SCI-Huntingdon after the date of his original complaint. Specifically, Powell's second amended complaint enlarges the time frame by including the total amount of time that he was incarcerated at SCI-Huntingdon: from his arrival, approximately August of 2012, until his release date, August 2, 2013. *Doc. 77* at 4.

Procedurally, adding events preceding the date of the original complaint should be made by Rule 15(a) amendment, while events occurring after the date of the original complaint should be made by Rule 15(d) supplementation. *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185 (3d Cir. 1979) ("Because it refers to events that occurred after the original pleading was filed, a supplemental pleading differs from an amendment, which covers matters that occurred before the filing of the original pleading but were overlooked at the time.")

While the DOC argues that events occurring after December 6, 2012, should not be permitted because Powell sought leave to merely amend his complaint, and did not request permission to supplement it, Powell counters that there "is no error if, as here 'leave for amendment' is granted when the proposed amendment alleges injury through actions continuing after the date of initial filing." *Doc. 87* at 4. Although the DOC is correct in asserting that events transpiring after December 6, 2012, constitute a supplement rather than an amendment, we agree with Powell that such labeling in the present matter is inconsequential. *See, e.g.*, *Consulnet Computing, Inc. v. Moore*, No. 04-3485, 2007 WL 764293, at *2 (E.D.Pa. Mar.8, 2007) ("[A] district court may, in its discretion, treat a pleading that has been mislabeled as an amendment as if it had been presented to the court on a motion to serve a supplemental pleading under Rule 15(d)"); *see also Bates v. Western. Elec*,

28

420 F. Supp. 521 (E.D. Pa. 1976) ("An application for leave to file a supplemental pleading like an application for leave to amend a complaint is addressed to the sound discretion of the trial court and should be freely granted when doing so will promote the justiciable disposition of the case, will not cause undue prejudice or delay or trial inconvenience and will not prejudice the rights of any parties to the action."). Moreover, the DOC has not demonstrated that such supplementation would be prejudicial. Thus, events occurring between December 6, 2012, and August 2, 2013, should not be struck as the DOC so requests.

**E. Conclusion.**

Because Powell may be able to avail himself of the administrative tolling doctrine and the continuing-violation doctrine, and because the DOC is not prejudiced by Powell supplementing his amended complaint to encompass all of his incarceration at SCI-Huntingdon, we recommend that the Court grant Powell's motion for leave to file a second amended complaint. We emphasize, however, that we do not recommend a dispositive adjudication of the DOC's statute of limitations defense. Rather, we find that at this stage of the case, the DOC simply has not demonstrated that, in light of our duty to "read the complaint with the required liberality," the limitations period bars Powell's second amended complaint. *See Leone v. Aetna Cas. & Surety Co*., 599 F.2d 566, 567 n.1 (3d Cir. 1979). We also emphasize that the DOC is not precluded from further developing

29

its arguments regarding the statute of limitations and raising such arguments at a future point in time.

## V. Recommendation.

Based upon the foregoing, **IT IS RECOMMENDED** that Powell's motion (*doc. 74*) for leave to file a second amended complaint be **GRANTED** and that the Court accept the second amended complaint (*doc. 77*) as the operative complaint in this case.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **13th** day of **September, 2016**.

_**S/ Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge